Case number 18-1252 et al. Enable Mississippi River Transmission, LLC and Enable Gas Transmission, LLC petitioners versus Federal Energy Regulatory Commission. Mr. Caldwell for the petitioners, Ms. Rylander for the respondents. Caldwell, welcome back. Thank you, Your Honors. Charles Caldwell again. As counsel for SFPP, I've been put forward to provide argument on behalf of the petitioners. I will say at the outset that there are some aspects of what I had intended to address that I believe were already covered in the argument with regard to N19-1067 with regard to SFPP's rate case. So in the interest of focus, I will not repeat those points. There are some matters that I would like to address and obviously one of them is the reviewability since we are talking about a policy statement. But where I would propose to begin is the commission's pending motion to dismiss these petitions which the court carried along. And I believe that's a propitious spot to start the discussion because of some of the things that that evidences. In the motion to dismiss the petitions, the commission claim, and I'm here talking about their motion at pages seven to eight, that dismissal of SFPP and enables petitions was warranted because of the pending SFPP and enable rate cases where, and here I'm quoting, importantly, petitioners will have the opportunity to seek judicial review of final orders issued in those proceedings where this court, with the aid of a fully developed pipeline-specific record, will have the opportunity to review the commission's treatment of the income tax allowance. And then on page nine of the motion, the commission stated that it would afford opportunities to issues in the specific cases. Are you reading from their brief? I didn't catch where you're reading. I apologize, your honor. It's the commission's motion to dismiss. It's in the record of this docket for the court. The commission moved to dismiss SFPP and enables petitions on the basis that we were appealing a policy statement. Got it. Okay. Okay. So, I'm sorry if I wasn't clear at the outset on that. So, and then just to be clear. So, the motion at page nine, then the commission stated that it would be affording opportunities to the petitioners to address those factual and legal issues in the specific cases. What's important is to understand that this, at the time it was, and I'm blanking on exactly the timing of the exact, when the motion was filed, these cases have been pending for some time. Subsequent to those assurances to the court as to why the petitions could be dismissed, because better to let these things develop in the rate cases, the FERC turned around and rejected SFPP's motion to reopen its rate case record. That rejection occurred in opinion 511B at paragraph 26, which makes it clear that the commission's assurances, one, having viewed it important to assure the court that it was better to get pipeline specific records developed in the rate cases in order to address these issues, those things didn't happen. Those assurances by the commission were in fact hollow. What is clear is that having chosen to not let either of the and the change in policy reflected in the revised policy, as having chosen to not let the petitioners develop these matters in their rate cases, reinforces the fundamental point that the commission has applied the revised policy as a binding rule without reference to the specific facts in either rate case as to either pipeline and affording no opportunity to address the policy in the context of a specific fact record. That reinforces, one, the need for review, the basis for reviewability, rather, of the policy statement. And it also, I would submit, reinforces why remand is appropriate, because it highlights the commission's recognition that a fully developed pipeline specific record would be appropriate in addressing the revised policy. And at this point, as it was discussed in the previous argument, SFPP submits that that has not been afforded to it. And I believe Enable would say likewise, that its attempt to develop in its underlying rate case dockets testimony on the question of how the policy would be applied to it were rejected out of hand in its dockets. That also then, I would say, that one, that's my SFPP and Enable's response as to the motion to dismiss. It also brings back around to, and I will be short about this, the other bases upon which how these issues have been dealt with, how the commission's chosen to approach its change in policy has created circumstances that warrant sending all of this back to the commission to take the united remand seriously, was one, as I won't elaborate on this, I've spoken before about the fact that it left SFPP's rate case record with a mismatched rate of return on equity, a fundamental component of the cost of service, which was derived on a different basis that predated the change in the commission's approach to tax allowance. And SFPP has been provided no opportunity to address that in the record below, and therefore has been forced to pay excessive refunds and set unreasonably low rates in violation of HOPE natural gas. It also has foreclosed the ability to deal with the market reaction to the commission's change in policy, which has happened simultaneously with the commission's application of the revised policy in SFPP and enables rate cases or nearly simultaneously were enabled. The implication of that market data goes to the heart of the issue with regard to the change in policy and its application, because the market changes evidenced or arguably back to the chief judge's previously, arguably presents a fact question as to whether or not those market changes indicated that there had been a tax recovery that was being eliminated unreasonably, rather than that there had been a double recovery. One of the strongest markers in that regard that SFPP, among the things SFPP could submit, this public information would be whether or not, since these, all the oil pipelines provide annual reports where they provide what their rate of return on equity is. Those are measurable. Among the measurable bits of data that could go into this type of inquiry would be what happened not just in the market, but what then happened to the rate of return on equity? Did it change in a way that suggested there'd been a double recovery or rather that there hadn't been a double recovery, but in fact, instead a legitimate cost item had been eliminated and the market reacted to that. Those are questions upon which facts could be developed, a record made, testimony put forward, cross-examination occur, and conclusions be drawn. That process was truncated by the commission's issuing of the revised policy and refusal to permit either SFPP or ENABLE to engage that change in policy with the facts presented to them. A further component, which I don't believe I've addressed of why it's important that these be its change in policy, entertain the notion of a partial tax allowance with regard to the income generated by pipeline that then flows to the corporate parent or the corporate parent, and therefore arguably presents a basis for a partial tax allowance related to that corporate ownership. SFPPs and ENABLE circumstances are significantly analogous to the situation in the Trailblazer case where the commission indicated it would support the inclusion of a partial tax allowance that's not been permitted to be explored because the record has been left as it is. That's another reason why the way the commission has chosen to handle its change in policy supports a review by the court and remand. Those are the principal items I wanted to address. I can also address further the basic question of reviewability, which I started out with with the motion. I believe that the court's authorities... Counsel, this is Judge Wilkins. Yes, sir. Explain exactly what legal effect Bennett-Krong II terms the policy has. I'm sorry, Your Honor. There was a little garble at my end. I apologize. Could you repeat that? Sure. Could you explain in Bennett-Krong II terms what legal consequence the policy has? I'm sorry, Your Honor. I'm going to have to get... Were you able to hear me the second time? Yes. Yes, I was. Now I am going to Bennett to get to the point you have pointed me. I'm sorry, Your Honor. I don't have that memorized. Perhaps I could be more effective in responding if you could remind me. Just my question is for finality purposes. Oh, yes. Review final orders. What is the legal effect of this policy statement? Sorry, Your Honor. I blanked out there. SFPP would submit that it is final because look at what has happened. At this point, SFPP... Let me connect the dots in that the revised policy was issued the same day that the commission issued Opinion 511C, which ruled that SFPP had to, consistent with the revised policy, eliminate its income tax allowance. Now, I'm not going to argue, Your Honor, that the revised policy statement itself was operative in the sense that it directly ordered SFPP to make a compliance file and all those things. Those occurred in 511C. But 511C did nothing to say anything beyond what the revised policy statement had said. And so the consequence for SFPP was clear. Based on the revised policy statement's finding with regard to double recovery and requiring the elimination of tax allowances, the impact on SFPP was it was required to lower its rates produced in the Westline rate case. It had to revise upward the refunds it had to pay. Those things have all happened. Those things have occurred. Refunds have been paid. SFPP's rates on the Westline were lowered as a result. And SFPP's request for rehearing of that outcome has been denied. So there is no... I would say that that strongly supports a finding of finality in that there's... And also that it's right because all of those consequences flowed from the revised policy statement. The carrier was given no opportunity to attempt to show that some other outcome was appropriate in its actual rate case. And the consequences of it have flowed through and been translated into rates and refunds paid. And SFPP's attempt to seek rehearing was denied. Therefore, is there any substantive challenge to the policy that you or any other party is pressing in these petitions that we won't resolve in the other case? So in other words, why isn't this then like the Canadian shippers case? Right. Right, Your Honor. I would submit, obviously, the point of these petitions was to ensure that the carriers were provided some forum in which to challenge this policy. That doesn't resolve the question you've raised. What SFPP would submit, the reason why there is value in reviewing the revised policy in tandem with the rate case is precisely the factors that were raised in the prior argument and then I've adverted to here is that the course of conduct of the commission has really been to a degree to play a shell game with the petitioners having, and that's why I referenced the motion to dismiss at the beginning, is that the petitioners have sought substantive review of the commission's change in policy. And the commission sought to dismiss these petitions as the policy statement on the basis that they were going to be afforded an opportunity in their rate cases. And yet that did not occur. The records were not reopened. Enable was summarily dismissed in attempting to address those issues. So I would say that the basis for why the petitioners have sought to proceed with their appeals as to the revised policy statement is because they're trying to make sure they have some forum in which they can attempt to address these issues that so far the commission has sought to avoid dealing with them. I understand that point. I guess my question to you is, if we address all of your merits arguments in the other set of petitions, is there anything that we will not have addressed in this set of petitions? It's a fair question, Your Honor. And what I would submit is that based on the track record, the concern of the petitioners as to what would not be addressed is the potential that having sent us, if we are provided the remand, I'll speak more specifically SFPP, so make it more concrete. SFPP has provided a remand by the court that ensures that it's provided a meaningful forum for the commission to develop the record to deal with these issues directly in the facts of its case. What would be left open is that does not in and of itself address the revised policy statement. One would hope that in such a remand proceeding in the rate cases, the validity of the revised policy statement would inherently be at issue. The concern would be in resolving the rate cases, in some fashion or another, the commission leaves the revised policy in place and treats the two petitioners as one-off, so to speak, situations, and leaves the wider concerns of the industry, which the Association of Oil Pipelines briefing has addressed, unaddressed and without any remedy. That would be, Your Honor, what I would say is not covered. If that sequence of events were to come to pass, and obviously we're building in a lot of hypotheticals, but if that sequence of events were to come to pass, then it seems like that would go a long ways towards showing why the policy statement shouldn't be reviewable, because the way you've laid it out, there would be a remand on the as-applied, and then in the course of resolving that remand, the commission would depart from the policy statement without touching the underlying policy statement, but as it's applying the principles to a particular set of circumstances, it would depart from it. Well, then that would just show that the policy statement isn't doing work in case-specific applications, and so it's therefore not the type of thing that we normally review. Yes, Your Honor, I understand that perspective. I also believe I'm out of time, but I'm sorry. So, unless the Court has other questions, I will stand down. Thank you. If my colleagues have nothing further, we'll hear from Ms. Rylander and give you a little time. Thank you, Your Honor. Good morning. May it please the Court, Elizabeth Rylander for the commission. Good morning. Going back to Judge Wilkins' question about Bennett, it is absolutely correct that the policy statement has... Counsel, this is Judge Rogers. Can you get closer to the mic or speak up please? Yes, Your Honor. Thank you. Okay. Let me start over, if I may. Returning to Judge Wilkins' question, it is absolutely correct that this policy statement has no legal effect on these petitioners or on any other entities. It is an expressly non-binding articulation of the commission's policy intentions, as stated at Rehearing Order Paragraph 7, JA 742. The Court should dismiss it and make the necessary rulings in the related FFPP case in the same way it did with the Canadian Association and ExxonMobil cases in 2007. Binding precedent was not set here, but in United Airlines and Opinion 511C. In addition to the obvious disability issues here, these petitioners lack standing. Their other as-applied cases have proceeded, as the Court has just heard at great length, so remand of these two orders will not provide them with any redress. Their as-applied cases will continue, and the commission will continue to make rulings there, as it already has, and the Court, obviously, will continue to make rulings in the FFPP case. The policy statement itself did not change any rates, so it itself caused no injury. The pipelines and the supporting pipeline associations don't allege any concrete particular harm that comes straight from the policy statement itself. Moving on to the commission's process, the commission started where the Court left off in United Airlines with an understanding that double recovery was prohibited. It investigated whether the income tax allowance could be used without producing such a double recovery and found that, generically, it appeared that it could not be. But the commission specifically left room for pipelines to support and justify the use of such an allowance in their own race. That's explained in the rehearing order, paragraph 68, JA 741-70. So, the petitioner pipelines here have not articulated any reason why the commission needs, why the Court needs to review these two orders, but merely their orders in the related as-applied cases. Can I ask you a bit of a suggestion on your argument? You're putting forward the submission that the case should be non-justiciable in some fashion, but if we just go beneath that one layer and ask through which doctrinal lens would you recommend that we dispose of it? You've invoked what we did in the CAP case, at least at the outset of your argument in a brief, and there we resolved it on grounds of mootness and we said the petition in that case was moot in light of what had happened in the parallel case in Exxon Mobil, but then much of your argument in brief isn't founding in mootness, it's founding in principles of finality. Your Honor, I think any of those theories is workable here. With regard to mootness, I would particularly point to the Enable petition. Their as-applied case has been resolved at this point or is about to be resolved through its settlement at the commission, which means that its challenge to the commission's new policy will have to wait for another day. And in terms of SFPP, the commission has completed that as-applied rate case and has provided specific rulings as to SFPP's own situation in its rates. So any challenge that SFPP might have to this generic statement of policy really has been resolved. While we didn't argue it in our brief, certainly mootness is available and certainly the court relied on that in the Canadian Association case. I would argue that the same is true with regard to finality because as Judge Wilkins said to my friend earlier, you can only review final orders that have legal effect. And once again, these orders have no legal effect but only articulate the commission's policy intentions. If the court does not have further questions, we will be happy to rest on our brief. Thank you, Ms. Rylander. If my colleagues don't have further questions, we'll hear from Mr. Caldwell for his rebuttal. Thank you. Thank you, Your Honor. Very briefly, just circling back around to what the solicitor has just been addressing, I would submit that with regard to the evaluation under Benefi-Sphere is that the, I would submit that the circumstances presented here are that the revised policy meets Benef-Sphere because made a mandatory determination after its process that it was that the revised policy is crystal clear as to its impact, that it would not, that tax allowance would not be permitted to master consequences as to SFPP's legal rights. And on that basis, that leads to the propriety of the review of the policy statement. And I have nothing further unless there are questions from the court. Well, if there's no questions from my colleagues, then we'll thank you, counsel, for your arguments this morning, and we will take this case under submission as well.
judges: Srinivasan, Rogers, and Wilkins